

DJP/DIS: USAO 2019R00274

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PWG19CR402 |
| | * | |
| KATRIN VERCLAS, | * | (Wire Fraud, 18 U.S.C. § 1343; |
| | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| Defendant | * | 21 U.S.C. § 853, 28 U.S.C. § 2461(c)) |
| | * | |

*******

## INDICTMENT

### COUNTS ONE THROUGH NINE
(Wire Fraud)

The Grand Jury for the District of Maryland charges that:

**Introduction**

At all times relevant to this Indictment:

*The Defendant and MobileActive*



1. The defendant, **KATRIN VERCLAS ("VERCLAS")**, resided in Massachusetts or in New York until in or about August 2012, when **VERCLAS** began residing in Washington, D.C.

2. Since at least in or about 1996 through at least in or about 2008, **VERCLAS** worked for nonprofit organizations, including Company A, rising to the rank of executive director. In her capacity as executive director of Company A, **VERCLAS** was responsible for setting up internal metrics and outcome tracking systems, and improving accounting and budgeting systems.

3. In or about June 2008, **VERCLAS** obtained control of MobileActive from Company B, a nonprofit organization. While under the direction of Company B, MobileActive operated as a network for social activism using mobile phone technology.

4. **VERCLAS** operated MobileActive as a for-profit business between in or about 2009 and in or about 2012.

*The State Department and Grant 613*

5. The U.S. Department of State ("State Department") was a cabinet-level agency within the executive branch of the U.S. Government. The Bureau of Democracy, Human Rights, and Labor ("DRL") was a bureau within the State Department. For fiscal years 2009 and 2010, Congress appropriated money to DRL under the category Democracy Fund/Human Rights and Democracy Fund/Global Internet Freedom ("Internet Freedom").

6. DRL was authorized to obligate Internet Freedom funds by making grants. Another bureau within the State Department—the Bureau of Administration, Logistics Management, Office of Acquisitions Management, International Programs—provided DRL with administrative assistance and financial oversight.

7. On or about December 17, 2009, DRL issued a public notice in the form of a Request for Proposal ("RFP") that solicited grant proposals under the title "Promoting Freedom of Expression and the Free Flow of Information through Technology and Access." The goal of the RFP was to identify grant recipients dedicated to the support and promotion of global internet freedom through the development of innovative technologies. The RFP stated that DRL anticipated making two to four grants in amounts of $1 million to $4 million.

8. The RFP required, among other things, that an applicant be a U.S. nonprofit organization pursuant to 26 U.S.C. § 501(c)(3), a comparable organization headquartered internationally, an international organization, or a university.

9. On or about January 22, 2010, **VERCLAS**, on behalf of MobileActive, submitted a grant proposal ("the Application") in response to the State Department's December 2009 RFP.

10. On or about September 20, 2010, the State Department awarded S-LMAQM-10-GR-613 ("Grant 613") to MobileActive in the amount of approximately $1.231 million. Under Grant 613, MobileActive promised, among other things, to develop and promote software applications for secure mobile communication. MobileActive also promised to develop and promote resources that would allow human rights organizations and activists in specified geographic areas to assess and mitigate risks associated with their mobile communications.

## The Scheme to Defraud

11. Between at least in or about August 2009 and continuing until in or about September 2013, in the District of Maryland and elsewhere, the defendant,

## KATRIN VERCLAS

knowingly and willfully devised and intended to devise a scheme and artifice to defraud the State Department, and to obtain money and property from the State Department by means of materially false and fraudulent pretenses, representations, promises, and material omissions, with the intent to defraud and knowledge of the scheme's fraudulent nature ("scheme to defraud").

## Manner and Means of the Scheme to Defraud

It was part of the scheme to defraud that:

12. In or about the summer and fall of 2009, **VERCLAS** approached Persons 1, 2, and 3 to serve on a purported board of directors for MobileActive. Persons 1, 2, and 3 agreed to

help **VERCLAS**, and provided her with certain personal information, including their dates of birth and social security numbers. **VERCLAS** incorporated MobileActive in or about January 2010 in the State of Delaware without the knowledge of at least Persons 1 and 2.

13. On or about December 1, 2009, **VERCLAS** opened a sole proprietor, business economy checking account ("the MobileActive bank account") with Bank of America in Amherst, Massachusetts.

14. On or about January 22, 2010, **VERCLAS**, on behalf of MobileActive, submitted a grant proposal ("the Application") in response to the State Department's December 2009 RFP. In the Application, **VERCLAS** certified to the truth and accuracy of the information contained therein and acknowledged the potential for criminal penalties associated with making false statements.

15. **VERCLAS** made numerous false statements in the Application, including a statement that MobileActive was a 501(c)(3) nonprofit organization.

16. **VERCLAS** caused the State Department to issue Grant 613 to MobileActive on or about September 20, 2010, based on the false statements she provided in the Application and subsequent pre-award amendments. The performance period of Grant 613 began on or about September 20, 2010, and continued through on or about October 31, 2011. **VERCLAS** later caused the State Department to extend the performance period until on or about September 30, 2012, based on her continued false representations.

17. On or about September 22, 2010, **VERCLAS** falsely certified on DS-1909, "Federal Assistance Award," that MobileActive would perform work as agreed under Grant 613, and that MobileActive would adhere to certain terms, conditions, and regulations.

18.     On or about October 19, 2010, **VERCLAS** established an electronic account with Payment Management System ("PMS") operated by the U.S. Department of Health and Human Services in Bethesda, Maryland, and provided the MobileActive bank account information to the State Department and PMS. **VERCLAS**, under the username KVERCLAS, was the only PMS account user associated with MobileActive. Under Grant 613, **VERCLAS** gained access to MobileActive funds by electronically logging into her PMS account and making specific requests for the release of funds.

19.     Under U.S. Department of Treasury regulations, **VERCLAS** only could request federal cash under Grant 613 through PMS to accommodate the immediate needs of MobileActive. Further, **VERCLAS** was prohibited from holding federal cash in the MobileActive bank account in excess of three working days. These regulations were intended to ensure that federal cash would be drawn from the U.S. Treasury on behalf of MobileActive for specific authorized uses.

20.     **VERCLAS** made electronic requests for money through PMS, and received by wire transfer approximately $1,222,000 into the MobileActive bank account between in or about October 2010 and in or about August 2012. During this time period, **VERCLAS** caused the transfer of over $450,000 from the MobileActive bank account to her personal bank accounts.

21.     From the beginning of the performance period on or about September 20, 2010, **VERCLAS** regularly diverted State Department money for her own personal use, and continued this practice until the MobileActive bank account was drained of State Department money by in or about October 2012.

22.     MobileActive was required to electronically file truthful and accurate quarterly financial reports with the State Department through PMS in order to account for MobileActive's

proper use of federal funds. **VERCLAS** knowingly filed financial reports that contained materially false and misleading statements. In filing the requisite financial reports electronically through PMS, **VERCLAS** certified each time that "the report is true, complete, and accurate, and the expenditures, disbursements and cash receipts are for the purposes and intent set forth in the award documents." **VERCLAS** further certified that she was "aware that any false, fictitious, or fraudulent information" may lead "to criminal, civil or administrative penalties."

23. **VERCLAS**, under the auspices of MobileActive, failed to perform work in connection with Grant 613 in a number of ways, and requested money through PMS to which MobileActive was not entitled. For example:

   a. **VERCLAS** discontinued the services of Company C, a software developer to which Grant 613 specifically allocated $410,000, and terminated MobileActive's relationship with Company C in or about October 2011. **VERCLAS** only paid Company C approximately $91,887.74. Yet the Application identified $410,000 for Company C costs, and **VERCLAS** sought approximately $410,000 through PMS for Company C's work.

   b. **VERCLAS** did not contract for services with Company D, a software developer to which Grant 613 specifically allocated $200,000. Company D was paid no money and performed no work in connection with Grant 613. Yet the Application identified $200,000 for Company D costs, and **VERCLAS** sought approximately $200,000 through PMS for Company D's work.

24. In or about September or October 2011, **VERCLAS** sought an extension of the performance period for Grant 613 under the guise of needing more time to perform the promised

work. Prior to that time, **VERCLAS** did not seek any amendments to Grant 613. Based on **VERCLAS**'s materially false representations, the State Department granted the request, extending the performance period until the end of September 2012 with the same terms, conditions, and regulations that governed the initial performance period.

25. In or about late 2011, **VERCLAS** began terminating MobileActive personnel.

26. **VERCLAS** knew that she was required to electronically file "closeout reports" in connection with Grant 613 through PMS. Closeout reports include, among other things, the final financial report and program report. **VERCLAS** failed to file these closeout reports.

## The Charges

On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

## KATRIN VERCLAS,

for the purpose of executing and attempting to execute the scheme to defraud, knowingly transmitted and caused to be transmitted in interstate and foreign commerce, by means of a wire communication, the following writings, signs, signals, pictures, and sounds:

| Count | Approx. Date | Description |
|---|---|---|
| 1 | 10/26/2010 | An electronic transmission of a request for $100,000 through PMS account KVERCLAS from a computer outside of Maryland to a computer located in Bethesda, Maryland. |
| 2 | 10/26/2010 | An electronic communication between a PMS computer located in Bethesda, Maryland, and a Federal Reserve Bank server located in East Rutherford, New Jersey, concerning the release of $100,000 into the MobileActive bank account. |
| 3 | 2/2/2011 | An electronic transmission of a financial report through PMS account KVERCLAS from a computer outside of Maryland to a computer located in Bethesda, Maryland. |

| | | |
|---|---|---|
| 4 | 7/21/2011 | An electronic transmission of a request for $250,000 through PMS account KVERCLAS from a computer outside of Maryland to a computer located in Bethesda, Maryland. |
| 5 | 7/26/2011 | An electronic communication between a PMS computer located in Bethesda, Maryland, and a Federal Reserve Bank server located in East Rutherford, New Jersey, concerning the release of $250,000 into the MobileActive bank account. |
| 6 | 3/15/2012 | An electronic transmission of a request for $80,000 through PMS account KVERCLAS from a computer outside of Maryland to a computer in Bethesda, Maryland. |
| 7 | 3/22/2012 | An electronic communication between a PMS computer located in Bethesda, Maryland, and a Federal Reserve Bank server located in East Rutherford, New Jersey concerning the release of $80,000 into the MobileActive bank account. |
| 8 | 7/26/2012 | An electronic transmission of a request for $80,000 through PMS account KVERCLAS from a computer outside of Maryland to a computer in Bethesda, Maryland. |
| 9 | 8/8/2012 | An electronic communication between a PMS computer located in Bethesda, Maryland, and a Federal Reserve Bank server located in East Rutherford, New Jersey concerning the release of $80,000 into the MobileActive bank account. |

18 U.S.C. § 1343

## **FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that, in the event of the defendant's conviction(s) under Counts One through Nine of this Indictment, the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c),.

2. Upon conviction of the offenses set forth in Counts One through Nine, the defendant,

## KATRIN VERCLAS,

shall forfeit to the United States of America any and all property, real or personal, which constitutes or is derived from proceeds traceable to such violation.  The property to be forfeited includes, but is not limited to, a sum of money equal to $1,222,000 in United States currency.

### Substitute Assets

3.  If, as a result of any act or omission of the defendant, any of the property described above:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or,

   e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States of America, to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

_Robert Hur_
Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**
Foreperson

Date:  August 21, 2019

9