IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Criminal No.: GJH-19-0402 |
| KATRIN VERCLAS, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Defendant Katrin Verclas is currently serving a sentence of 728 days of incarceration after pleading guilty to Obstruction of a Federal Audit and Failure to File a Suspicious Activity Report, both felony counts. ECF No. 75. Pending before the Court is Ms. Verclas's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 84. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Ms. Verclas's Motion is denied.

**I.   BACKGROUND**

On January 6, 2021, Defendant pleaded guilty to Obstruction of a Federal Audit, in violation of 18 U.S.C. § 1516, and Failure to File a Suspicious Activity Report, 31 U.S.C. §§ 5318(g)(1), 5322. ECF No. 54. Attached to the plea agreement was a statement of stipulated facts describing conduct supporting Defendant's guilty plea. *Id.*

The stipulation states that, from at least November 2012 until about February 2014, Defendant sought to deceive and defraud the United States, in connection with an audit of a State

1

Department grant she obtained on behalf of a Delaware corporation. *Id.* at 10–11.[1] More than $100,000 was disbursed through the grant program into a Bank of America account held in the corporation's name. *Id.* Defendant maintained sole control of the bank account at all times. *Id.* at 11. Defendant intentionally ignored requests for compliance by State Department auditors because she knew she did not have the required reports, documents, and items to comply with the audit. *Id.* Defendant also knowingly and willfully caused Bank of America to fail to file a Suspicious Activity Report in connection with certain bank account transactions, for the period from at least November 2010 to about October 2012. *Id.* at 12.

Defendant's sentencing hearing was held on May 12, 2021. ECF No. 66. Based on an offense level of 12 and Defendant's lack of prior criminal history, the Court determined that Defendant's advisory sentencing guidelines range was 10 to 16 months. ECF No. 68 at 1. The Court sentenced Defendant to an above-guidelines sentence of 728 days incarceration (approximately 24 months), to be followed by three years of supervised release, which was the sentence agreed to by both parties, pursuant to Rule 11(c)(1)(C).[2] ECF No. 67.

On May 16, 2022, Defendant filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing potential health complications based on her medical history, her designation at the Federal Correctional Institution in Aliceville, Alabama ("FCI Aliceville"), and unusually harsh conditions of confinement. ECF No. 84; ECF No. 84-1. The Government filed an Opposition on June 2, 2022. ECF No. 86.[3] The Defendant filed a Reply on June 27, 2022. ECF No. 90.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[2] As part of the negotiated plea, the Government agreed to the dismissal of nine counts of Wire Fraud.
[3] All motions to seal and the consent motion for extension of time related to the pending motion are granted.

## II. DISCUSSION

Pointing to her designation at FCI Aliceville and the harsh conditions of her confinement, as well as an underlying cardiac condition, Defendant moves for a reduction in her sentence for "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 84; ECF No. 84-1.

### A. Governing Provisions

Recently modified by Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5238 (2018), 18 U.S.C. § 3582(c) bars courts from modifying terms of imprisonment once imposed unless certain conditions are met. *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). In relevant part, § 3852(c)(1)(A) provides that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that–
>    (i) extraordinary and compelling reasons warrant such a reduction;
> ...
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1).

Accordingly, after determining whether administrative remedies have been exhausted, the Court typically next considers whether a reduction is warranted for extraordinary and compelling reasons. The Court of Appeals for the Fourth Circuit has found that, when a defendant motions a court directly for compassionate release, the meaning of "extraordinary and compelling" is a matter of the court's independent discretion. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). Nevertheless, in some circumstances, the Sentencing Commission's Policy Statement, §

3

1B1.13, may "remain[ ] helpful guidance even when motions are filed by defendants." *Id.* at 282 n.7. Finally, if extraordinary and compelling circumstances are deemed present, the Court must then "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

### B. Exhaustion of Administrative Remedies

The first issue is whether Defendant has exhausted her administrative remedies. As noted previously, § 3582(c)(1)(A) requires that a defendant seeking a modification of a term of imprisonment "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On December 27, 2021, Defendant submitted her request for compassionate release to FCI Aliceville on the ground that underlying health conditions, including an aortic aneurysm and uncontrolled hypertension, made her particularly susceptible to contracting COVID-19. ECF No. 84-8 at 2. Defendant submitted a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) to the Court on May 16, 2022, well over 30 days after her request was made to FCI Aliceville. ECF No. 84. In the pending Motion, Defendant argues for release on the grounds that her underlying health conditions have been exacerbated during her incarceration and that the conditions of her confinement have been unnecessarily harsh. The government argues, however, that the First Step Act's exhaustion requirement mandates not just that a defendant make a request to the warden of her facility, but that the request contain the "very same" bases for release as those subsequently presented to the district court. ECF No. 86 at 5. As such, the government asserts that Ms. Verclas has failed to exhaust her administrative remedies. *Id.* at 6–7.

4

The Court of Appeals for the Fourth Circuit has not addressed whether a defendant must raise the same issue to the court in order to exhaust her administrative remedies under § 3582(c)(1)(A), although courts in this district "have consistently found the statute does not require 'issue exhaustion,'" *United States v. Rice*, No. CR CCB-12-412, 2021 WL 2315447, at *2 (D. Md. June 7, 2021) (collecting cases). Here, the Court will assume without deciding that Defendant has exhausted her administrative rights because the request must be denied on other grounds.

C. **Extraordinary and Compelling Reasons**

The Court next considers whether Defendant has sufficiently demonstrated extraordinary and compelling reasons warranting a reduction of her sentence. Defendant bases her argument on the fact that she suffers from an aortic aneurysm, a condition that has become more serious as a result of her incarceration, that she was incorrectly designated at FCI Aliceville, and that she has faced "exceptionally harsh" circumstances of confinement. ECF No. 84-1 at 9.

In determining whether grounds for compassionate release exist, courts are generally charged with balancing "the severity of the inmate's personal circumstances" against "the need for incarceration." *United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022). As noted previously, the Fourth Circuit has found that courts may independently determine whether extraordinary and compelling circumstances exist when a defendant moves for release. *McCoy*, 981 F.3d at 284. Nevertheless, the Sentencing Commission's existing Policy Statement "remains helpful guidance," especially with regards to medical issues. *Hargrove*, 30 F.4th at 197. The Policy Statement describes "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." U.S.S.G. § 1B1.13 background. In cases involving medical concerns, the Policy Statement provides that

5

extraordinary and compelling circumstances exist, in part, when a defendant is suffering from "a terminal illness" or "a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

Here, Defendant contends that her incarceration at FCI Aliceville—and a concomitant lack of healthy food, regular exercise, and uninterrupted access to medication—has significantly raised her blood pressure, increasing the risk that an ascending thoracic aortic aneurysm could pose a danger to her health. ECF No. 84-1 at 4–7, 13–15. Medical records from 2020, provided by Defendant, indicate that the aneurysm last measured at 4.0 centimeters. ECF No. 84-1 at 5; ECF No. 84-3. The government, however, raises questions as to whether an aneurysm exists at this time, pointing to a more recent examination conducted in March 2022, which found a "[m]ild prominence of the ascending aorta without frank aneurysm." ECF No. 86 at 12; ECF No. 86-2 at 15.

Assuming that an aneurysm currently exists, the Court is nonetheless unpersuaded that the condition rises to the level of extraordinary and compelling. While it is likely true that Defendant's cardiac condition and blood pressure should continue to be monitored to ensure any aneurysm does not become more serious, it does not appear that the condition "substantially diminishes the ability" of Ms. Verclas to care for herself within FCI Aliceville at this time. U.S.S.G. § 1B1.13 cmt. 1(A). Indeed, Defendant herself concedes that aneurysms "smaller than 5.5 centimeters don't usually need surgery right away." ECF No. 84-1 at 5 (quoting Cleveland Clinic, *Ascending Aortic Aneurysm*, https://my.clevelandclinic.org/health/diseases/21949-ascending-aortic-aneurysm). Further, Defendant's most recent blood-pressure reading from May

20, 2022, measured as "mildly elevated." ECF No. 89 at 1; ECF No. 89-1 at 5. Defendant has recently been prescribed a new blood-pressure medication to help control her hypertension. *Id.*

Next, Defendant argues that the conditions of confinement she has encountered at FCI Aliceville also constitute extraordinary and compelling reasons for a sentence reduction. Defendant contends both that she was incorrectly designated to FCI Aliceville in the first place, a facility far from her family and counsel, and that she has faced an excessive amount of time in isolation due to COVID-19 and an unrelated facility lockdown, leading to a "much harsher incarceration" than anticipated. ECF No. 84-1 at 10–11; *see also* ECF No. 90 at 8.

Nevertheless, while the Court did previously recommend to the Bureau of Prisons (BOP) that it designate Defendant to the Work Cadre for Low Security Women at the Federal Detention Center in Philadelphia, and specifically recommended that BOP *not* designate Defendant to FCI Aliceville, ECF No. 75 at 2, the designation of inmates ultimately remains within the purview of BOP; such decisions are not reviewable by this or any court, 18 U.S.C. § 3621(b).

What's more, although it is unfortunate that pandemic-related quarantines have restricted life in prison, this alone is not sufficient grounds for early release. Indeed, the "harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently extraordinary and compelling to warrant compassionate release." *United States v. Hall*, No. CR JKB-04-0323, 2022 WL 2105975, at *3 (D. Md. June 10, 2022) (internal quotations and citation omitted). And to the extent COVID-19 itself is of concern to Ms. Verclas's health, the wide availability of vaccines and boosters mitigates that concern.

Even when taken together, the various circumstances of Ms. Verclas's incarceration—her ongoing medical issues, her designation at FCI Aliceville, and the conditions of her

confinement—do not present extraordinary and compelling reasons warranting a sentence reduction.

### D. 3553(a) Factors

Even if Defendant could demonstrate extraordinary and compelling reasons justifying a sentence reduction, her request would likely still fail.

As previously discussed, courts must also look to the § 3553(a) sentencing factors in determining whether a sentence reduction is appropriate. With respect to the sentencing factors, § 3553(a)(1), "the nature and circumstances of the offense and the history and characteristics of the defendant," and § 3553(a)(2), "the need for the sentence imposed" to further certain purposes, are particularly relevant in weighing compassionate release motions. *See United States v. Williams*, No. 19-CR-134-PWG, 2020 WL 3073320, at *5 (D. Md. June 10, 2020). The purposes listed in § 3553(a)(2) include "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

After considering the § 3553(a) factors, the Court concludes that compassionate release is not appropriate. It is true that, at the time of this decision, Defendant will have already served more than the lower end of the sentencing guidelines range (10 to 16 months) in this matter,[4] *see* ECF 84-1 at 18, other considerations weigh against release at this time. Notably, Defendant has served less than two-thirds of the 728-day sentence imposed by the Court, a sentence that she

---

[4] As indicated above, the lower guideline range reflected the result of a negotiated Rule 11(c)(1)(c) plea in which the Government agreed to dismiss nine counts of Wire Fraud.

agreed to, presumably with some awareness of her medical conditions, and that already accounted for the nature of the conviction and Defendant's lack of criminal history. Therefore, a sentence reduction to time served "is not compatible with the § 3553(a) factors and purpose of sentencing." *United States v. Jones*, No. CR TDC-17-0006-6, 2022 WL 2953564, at *3 (D. Md. July 26, 2022).

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. 18 § 3582(c)(1)(A)(i), ECF No. 84, is denied.

Date: <u>August 23, 2022</u>                                   __/s/_____
                                                              GEORGE J. HAZEL
                                                              United States District Judge